### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOHN E. RODARTE, SR.,** | § | |
| **TDCJ No. 1263270,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-16-CA-71-RP** |
| | § | |
| **BENEFICIAL TEXAS. INC.,** | § | |
| **DONNA KAY McKINNEY, Bexar County** | § | |
| **District Clerk,** | § | |
| **RALPH LOPEZ, former Bexar County** | § | |
| **Sheriff,** | § | |
| **DINAH GAINES, Staff Attorney,** | § | |
| **MICHAEL MERY, Judge, and** | § | |
| **FRED SHANNON, Judge,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John E. Rodarte, Sr. filed this action pursuant to 42 U.S.C. § 1983, seeking injunctive relief from this Court setting aside certain Orders and Judgments adverse to Plaintiff in a variety of state civil and criminal proceedings. For the reasons discussed below, all of Plaintiff's claims are dismissed as frivolous.

## I. Background

This lawsuit does not take place in isolation. Rather, it represents the latest in a series of actions filed by Plaintiff in this Court, most of which have been dismissed as completely lacking in any arguable merit.

Plaintiff was convicted in September, 2004 in Bexar County cause no. 2003-CR-6651 of aggravated sexual assault and indecency with a child. The Texas Fourth Court of Appeals affirmed Plaintiff's convictions in an unpublished opinion issued March 15, 2006. *Rodarte v. State*, 04-04-

00673-CR. 2006 WL 622516 (Tex. App. - San Antonio Mar. 15, 2006, *pet. ref'd*). The Texas Court of Criminal Appeals refused Plaintiff's petition for discretionary review on August 30, 2006. Plaintiff filed his first federal habeas corpus action challenging his 2003 state criminal convictions in this Court on December 3, 2007, as cause no. SA-07-CA-988-XR. This Court denied Plaintiff's request for federal habeas corpus relief on the merits and denied Plaintiff a Certificate of Appealability on October 23, 2008. The Fifth Circuit denied Plaintiff's request for a Certificate of Appealability in an unpublished Order issued October 22, 2009. *Rodarte v. Thaler*, No. 08-51253 (5th Cir.).

On December 26, 2013, Plaintiff filed a civil action in the Austin Division of this Court which was docketed as cause no. A-13-CA-1093-LY against senior state district judge Fred Shannon, Bexar County, Texas, the Bexar County Sheriff, a private attorney, and an Assistant Bexar County Criminal District Attorney, alleging Judge Shannon had improperly dismissed a state civil action (Bexar County cause no. 2005-CI-188884) which Plaintiff had brought against Bexar County and in which Plaintiff sought several million dollars in damages for a back injury Plaintiff claimed he sustained while in custody of the Bexar County Sheriff's Department. After that action was transferred to the San Antonio Division of this Court and docketed as cause no. SA-14-CA-100-DAE, Senior District Judge Ezra dismissed Plaintiff's claims, finding the state appellate courts had ruled Judge Shannon's dismissal of Plaintiff's state court action had been appropriate under state law and Plaintiff had failed to file a timely notice of appeal (*Rodarte v. Bexar County*, No. 04-12-211-CV, 2013 WL 1908381 (Tex. App. - San Antonio, May 8, 2013)). Judge Ezra concluded Plaintiff's federal civil rights claims in that lawsuit were, in fact, a collateral attack upon a state court

proceeding and dismissed Plaintiff's claims for lack of jurisdiction, citing the Supreme Court's *Rooker-Feldman* doctrine.

On November 15, 2015, Plaintiff herein filed a Notice of Removal, seeking to remove to this Court a state civil foreclosure action brought against him by Beneficial Texas, Inc. (Bexar County cause no. 2010-CI-14597). Plaintiff's Notice of Removal was docketed as cause no. SA-15-CA-870-FB. In an Order issued November 10, 2015, then-Chief Judge Biery remanded that action to the state court, after concluding there was no basis for this Court to assert jurisdiction over the state law foreclosure action Beneficial Texas had brought against Plaintiff in state district court.

## II. <u>Proceedings in this Action</u>

Plaintiff filed his original § 1983 complaint in his lawsuit on January 19, 2016 (ECF no. 1), naming as defendants senior state district judge Shannon, state district judge Michael Mery, former Bexar County Sheriff Lopez, the current Bexar County District Clerk, a person identified by Plaintiff as a state court staff attorney, and Beneficial Texas, Inc.[1] Plaintiff alleged in his original complaint that the defendants (1) failed to properly follow Texas state law regarding homestead, probate, and property matters, (2) failed to set his civil case for a jury trial, grant a motion for new trial, or reinstate a legal action Plaintiff filed against Beneficial Texas, Inc., (3) offered to settle out of court twice, (4) "denied medical," (5) removed the cause from the jury docket, (6) requested a no evidence summary judgment, (6) refused to proceed to jury trial, (7) failed to hold an evidentiary hearing, (8)

_____

[1]This Court takes judicial notice pursuant to Rule 201(b)(2), FED..R.EVID.,that Michael Mery is currently judge of the 37th Judicial District Court of the State of Texas and Fred Shannon is the former judge of the 131st Judicial District Court of the State of Texas (1975-80) and a former District Judge of the United States District Court for the Western District of Texas (1980-84) who currently serves as a Senior District Judge within the Fourth Administrative Judicial Region of the State of Texas.

mishandled a case file, and (9) failed to properly file motions and pleadings submitted for filing by Plaintiff, (10) held a hearing on October 7, 2015, which was outside the applicable statute of limitations, (11) denied a motion for jury trial, (12) denied Plaintiff due process, (13) are somehow responsible for deficiencies in the law library at the TDCJ's Clements Unit, (14) are somehow responsible for the refusal of the Texas Department of Family & Protective Services to turn over to Plaintiff an investigative file on Plaintiff's mother and son, (15) are somehow responsible for the refusal of the Texas Attorney General's Office to make available to Plaintiff another investigative file regarding 1996 outcry's made by Plaintiff's sons, (16) failed to make Plaintiff aware of certain lawsuits and filings made by or against Beneficial Texas, Inc. in cause no. 2010-CI-14597 and cause no. 2011-CI-03434, (17) acted to contravene a final judgment in cause no. 1995-CI-05393, (18) failed to furnish Plaintiff with copies of closing documents upon request, (19) denied Plaintiff agricultural and homestead exemptions, ( 20) failed to properly address requests for indigent status, (21) failed to properly docket and document pleadings submitted for filing by Plaintiff and a ruling by a state district judge reinstating action 2005-CI-18884, (22) denied Plaintiff's requests on unspecified dates for unidentified medications, and (23) rendered an improper summary judgment

against Plaintiff.[2]  Plaintiff requests injunctive relief as well as "all relief allowable under State and

Federal law," including "any and all damages available."[3]

In an Order issued January 29, 2016 (ECF no. 3), this Court explained to Plaintiff that (1) his

claims against the judicial officers named as Defendants appeared to be foreclosed by the doctrine

of absolute judicial immunity, (2) many of his claims appeared to be barred by the two-year statute

of limitations applicable to § 1983 claims in Texas, (3) his collateral attacks upon various judgments

---

[2] Plaintiff's original complaint also included numerous complaints about the conduct of prison personnel and the quality of the law library holdings at the TDCJ's Clements Unit in Amarillo.  However, Plaintiff did not name any of these persons as Defendants in this lawsuit and this Court could not exercise personal jurisdiction over such persons even if Plaintiff had done so. Plaintiff also complains about the actions of the Texas Department of Family & Protective Services during a legal proceeding in 2006-07.

The barely legible handwritten pages attached to Plaintiff's original complaint include a rambling series of conclusory and barely intelligible accusations, primarily against Defendant Beneficial Texas, Inc. (henceforth "Beneficial Texas"), including assertions by Plaintiff that this Defendant (1) did not produce a copy of a 2005 loan agreement when requested to do so by Plaintiff, (2) loaned amounts to Plaintiff's late mother which exceeded the proportion of the value of the late Mrs. Rodarte's residence allowable under Texas law, (3) failed to properly document a 2006 loan between Beneficial Texas and the late Mrs. Rodarte, (4) failed to include a provision for an urban homestead exemption in the 2006 loan documents, thereby rendering the loan agreement legally invalid, (5) charged an excessive rate of interest on the 2005 and 2006 loans, (6) transmitted "acceleration letters" in July, 2010 and filed an original petition for foreclosure (presumably in state court) in August, 2010, and (7) thereafter filed multiple motions for summary judgment over a several year period in the foreclosure action, in violation of the state statute of limitations.  Plaintiff's Original Complaint (ECF no. 1), at pp. 5-10.  Plaintiff alleges that Defendants McKinney and Gaines failed to timely file and docket pleadings and motions Plaintiff sent to the state district court in several of his civil lawsuits during 2008-11.  *Id.*, at pp. 10-12.  Plaintiff alleges Defendants Shannon and Mery granted motions for summary judgment in civil cases in which Plaintiff was a party, denied or ignored motions for jury trial filed in those cases by Plaintiff, used their authority to give other parties in Plaintiff's civil lawsuits an unfair advantage, and dismissed at least one civil lawsuit in 2011 without affording Plaintiff a jury trial.  *Id.*, at pp. 13-15.

[3] Plaintiff's Original Complaint, (ECF no. 1), at pp. 4 & 16.  Plaintiff also requests that this Court take judicial notice of all documents filed in any and all of Plaintiff's civil lawsuits in the state courts as well as a jury trial, exemplary damages, and a bench warrant, i.e., to be returned to Bexar County.  *Id.*

in state civil proceedings appeared to be barred by the *Rooker-Feldman* abstention doctrine, and (4) his original complaint failed to state a cause of action against the named defendants.  This Court instructed Plaintiff to answer five questions designed to elicit the specific factual bases for Plaintiff's § 1983 claims against each of the named Defendants.

After requesting and obtaining extensions of time to reply to the Court's Order for more definite statement, Plaintiff finally filed his response on March 15, 2016 (ECF no. 13).  Plaintiff alleges in his response that (1) his criminal conviction resulted from false testimony, a violation of Double Jeopardy principles, and failure to disclose exculpatory material as mandated by *Brady*, (2) this Court erroneously denied Plaintiff's motions for appointment of counsel, (3) Judges Shannon and Mery violated Plaintiff's due process right to a jury trial and "acted in absence of all jurisdiction" when they issued Orders granting a summary judgment in state cause 2005-CI-18884 without first affording Plaintiff a jury trial, after another judge had set the same case for jury trial, (4) Judge Shannon issued an order in December, 2011 erroneously reversing an earlier order entered in the same case in 2008, (5) this Court is a court of law and not a court of equity possessing jurisdiction over Plaintiff's suit to retain an interest in an unidentified private trust, (6) both Judges Shannon and Mery refused to acknowledge a conflict of interest arising from a Bexar County attorney representing a County governmental entity and Sheriff Lopez in cause no. 2005-CI-18884, (7) on October 7, 2015, Judge Mery granted a summary judgment favorable to Beneficial Texas and adverse to Plaintiff in Bexar County cause no. 2010-CI-14597 after Plaintiff unsuccessfully attempted to remove that same action to this Court, in violation of state and federal homestead protections, (8) this Court has wrongfully refused Plaintiff's request that this Court examine the records from Bexar County cause no. 2010-CI-14597, thereby denying Plaintiff access to court, (9) Judge Mery's ruling

6

in 2010-CI-14597 was contrary to a pair of prior rulings made in the same case by Judge Richard Price on July 11, 2013 and August 28, 2013, and deprived Plaintiff of property which had been awarded to Plaintiff in a 1998 divorce decree, (10) Judge Mery also violated a fiduciary duty to Plaintiff when he ruled against Plaintiff in cause nos. 2010-CI-14597 and 2005-CI-18884, (11) Judge Mery's ruling deprived Plaintiff of a due process interest in Plaintiff's property by clouding title to the property and disregarding the last will and testament of Plaintiff's late mother, (12) all the defendants waived their rights to assert qualified, sovereign, and any other immunity by violating Plaintiff's federal constitutional rights, (13) Judge Shannon and Judge Mery's rulings in cause no. 2005-CI-18884 deprived Plaintiff of his due process right to a jury trial in a state tort lawsuit against former Sheriff Lopez, (14) on unspecified dates, former Sheriff Lopez denied Plaintiff adequate medical care for trauma to Plaintiff's lower back, discs, broken and healed tail bone, pain, leg discomfort, which rendered Plaintiff unable to work for an unspecified period,  (15) on unspecified dates, former Sheriff Lopez also failed to properly train deputies responsible for transporting Plaintiff on a bus which had a loose seat, which injured Plaintiff, (16) on unspecified dates, Defendants McKinney and Gaines failed to include documentary evidence in the record which Plaintiff had sent to the state district court in his civil lawsuits, (17) on March 13, 2015, Plaintiff mailed a "petition for original petition for lawsuit against Beneficial Texas, Inc.'s successor Caliber Home Loans" addressed to defendant McKinney, (18) on October 8, 2015, Plaintiff mailed to defendant McKinney a separate "Original Petition For Lawsuit," (19) Plaintiff has not yet received any acknowledgments from Defendant McKinney of her receipt of either of those two documents, despite Plaintiff's request that she send him such an acknowledgment, (20) a "Motion to Reinstate" mailed by Plaintiff on January 30, 2008, to the Bexar County District Clerk (or possibly Defendant Gaines) in cause 2005-

CI-18884 was not filed and docketed until February 13, 2008, (21) medical records which Plaintiff

sent to the Bexar County District Clerk (or possibly Defendant Gaines) in October and November,

2008 and possibly in November, 2011 were never filed in the appropriate case and, as a result, Judge

Shannon entered a summary judgment adverse to Plaintiff in December, 2011, (22) Plaintiff is

entitled to re-argue in this action his claims attacking his state criminal conviction in state cause no.

2003-CR-6651, (23) Beneficial Texas, Inc.'s legal action seeking foreclosure against Plaintiff's real

property was itself foreclosed by operation of applicable Texas law and the Judgments entered in

favor of Plaintiff in 2013 which were erroneously invalidated in 2015, (24) Defendants Gaines and

McKinney failed to present Plaintiff's motions to a "jury docket judge" prior to the October 7, 2015

entry [in cause no. 2010-CI-14597] of a summary judgment adverse to Plaintiff, (25) Judges

Shannon and Mery failed to investigate a subpoena directed to Dr. Maxwell and Dr. Wheeler issued

by the Bexar County District Clerk's Office, and (26) Beneficial Texas illegally seized Plaintiff's

home with a court order obtained through fraud, undue duress, distress, mental anguish, pain and

suffering, and discrimination, in violation of the state and federal constitutions.

### III. Standard of Review Under Rule 12(b)(6), Fed.R.Civ.P.

The pleading standard set forth in Rule 8(a)(2), Fed.R.Civ.P., (which requires only "a short

and plain statement of the claim showing that the pleader is entitled to relief") does not require

detailed factual allegations but it does demand more than an unadorned, the-defendant-unlawfully-

harmed-me accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal,* 556 U.S. at 678; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex*

8

*rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678; *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d at 360. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it renders "naked assertions" devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557.

## IV. Standard for Review Under Sections 1915(e) (2) (B)

When Congress enacted the Prison Litigation Reform Act of 1996 ("PLRA"), it specifically amended Title 28 U.S.C. § 1915(e) (2) (B) (i) and added new § 1915A to provide that a complaint filed by a prisoner could be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041 (1999). Therefore, Plaintiff's claims herein are subject to review under §§ 1915(e) and 1915A(b) for dismissal as frivolous regardless of whether he paid any portion of the filing fee in this cause. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding the federal district courts are required to dismiss any action brought by a prisoner that is frivolous, malicious, fails to

state a cause of action, or seeks monetary damages from a defendant who is immune from such relief); 42 U.S.C. §1997e(c).

Title 28 U.S.C. § 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). In an action filed In Forma Pauperis, a court may raise sua sponte the issue of whether an action is malicious or frivolous under § 1915(e). *Neitzke v. Williams*, 490 U.S. at 327; *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999) (holding it appropriate for a district court to *sua sponte* determine whether a claim was barred by limitations); *Schultea v. Wood*, 47 F.3d at 1434. Dismissal of a claim as frivolous under § 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. at 325; *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013).

A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *Rogers v. Boatright*, 709 F.3d at 407; *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Harris v. Hegmann*, 198 F.3d at 156; *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. at 32-33; *Rogers v. Boatright*, 709 F.3d at 407; *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (holding dismissal as frivolous appropriate after the plaintiff is given an opportunity to amend or allege additional facts through answers to a post-complaint questionnaire), *cert. denied*, 560 U.S. 944 (2010); *Samford v. Dretke*, 562 F.3d at

678; *Harris v. Hegmann*, 198 F.3d at 156 (holding a complaint is factually frivolous when the facts alleged are fantastic or delusional or the legal theory upon which a complaint relies is indisputably meritless).

Typical examples of claims which can be dismissed pursuant to § 1915(e) include (1) claims against which it is clear that the defendants are immune from suit (*Neitzke v. Williams*, 490 U.S. at 327; *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995) (upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity; *Boyd v. Biggers,* 31 F.3d 279, 284-85 (5th Cir. 1994) (holding the same)); (2) claims of infringement of a legal interest that clearly does not exist (*Neitzke v. Williams*, 490 U.S. at 327; *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (upholding dismissal as frivolous of complaints about prison grooming regulations); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (holding a state prisoner possessed no constitutionally-protected right to grow a beard or his hair long); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (affirming the dismissal as frivolous of a claim by a convicted prisoner that he had been denied the opportunity to attend religious and educational classes with the general inmate population based upon his diagnosis as a mental patient)); and (3) claims barred by limitations (*Harris v. Hegmann*, 198 F.3d at 156; *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir. 1993); *Henson-El v. Rogers*, 923 F.2d 51, 53 (5th Cir.), *cert. denied*, 501 U.S. 1235 (1991)).

In reviewing a complaint under § 1915(e), a court is not bound to accept without question the truth of the Plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. at 32; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of

the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them. *Denton v. Hernandez*, 504 U.S. at 32-33; *Harris v. Hegmann*, 198 F.3d at 156; *Gartrell v. Gaylor*, 981 at 259.  A district court may dismiss an In Forma Pauperis proceeding as frivolous under 28 U.S.C. § 1915(e) whenever it appears that the claim has no arguable basis in law or fact.  *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006) (upholding dismissal as frivolous of prisoner's complaint about the confiscation of a medical pass that was re-issued the same date it was confiscated); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (upholding dismissal as frivolous of prisoner's complaints (1) about alleged failure of prison officials to investigate prisoner's grievances against prison mail room and security staff, (2) of retaliation based upon prisoner's failure to exhaust administrative remedies, and (3) about allegedly negligent loss of property); *Velasquez v. Woos*, 329 F.3d 420, 421 (5th Cir. 2003) (upholding dismissal as frivolous of prisoner's complaint about collection of DNA sample from him); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (dismissing as frivolous a prisoner's complaint he was forced to undergo medical treatment for Tuberculosis while incarcerated).  In the course of making that determination, a federal court may employ an evidentiary hearing (as suggested by the Fifth Circuit's opinion in *Spears v. McCotter*, 766 F.2d 179, 180-81 (5th Cir. 1985)), or a questionnaire (as suggested by the Fifth Circuit's opinions in *Talib v. Gilley*, 138 F.3d at 213; *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994), *cert. denied*, 513 U.S. 883 (1994); and *Parker v. Carpenter*, 978 F.2d 190, 191 (5th Cir. 1992)).  This Court's Order for More Definite Statement was intended to comply with the foregoing suggestions by furnishing Plaintiff with notice of the deficiencies in his original complaint and an opportunity to file an amended pleading which alleged specific facts sufficient to avoid summary dismissal of his claims herein as frivolous.  *See Brewster v. Dretke*, 587 F.3d at 767-68 (recognizing

general rule that a Plaintiff should be offered an opportunity to amend his complaint before it is dismissed).

In an action proceeding under § 1915(e), a federal court may consider *sua sponte* affirmative defenses that are apparent from the record even where they have not been addressed or raised in the pleadings on file. *Harris v. Hegmann*, 198 F.3d at 156 (recognizing the propriety of a district court's raising the defense of limitations *sua sponte*); *Schultea v. Wood*, 47 F.3d at 1434 (recognizing the authority of the district court to dismiss an action based on the doctrine of qualified immunity); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990) (limitations); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989) (limitations).   Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of an answer. *Brewster v. Dretke*, 587 F.3d at 767 ("The district court may dismiss an *in forma pauperis* proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met.").

A case is not frivolous simply because it fails to state a claim.  *Neitzke v. Williams*, 490 U.S. at 331; *Gartrell v. Gaylor*, 981 F.2d at 259; *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468.  However, if the claim has no arguable basis in law or fact, the complaint can be dismissed under § 1915(e). *Gartrell v. Gaylor*, 981 F.2d at 259; *Parker v. Carpenter*, 978 F.2d at 191 n.1; *Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir. 1990).   "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal theory.'" *Boyd v. Biggers*, 31 F.3d at 281-82 (*quoting Neitzke v. Williams*, 490 U.S. at 327).   An In Forma Pauperis complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under § 1915(e).  *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468 (complaints

that are clearly baseless include those which describe fanciful, fantastic, or delusional scenarios).

Furthermore, when it is clear from the face of the complaint that the claims asserted are subject to

an obvious meritorious defense, such as a peremptory time bar, dismissal with prejudice is

appropriate. *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993).

## V. <u>The Nature of § 1983 Generally</u>

Title 42 U.S.C. Section 1983 does not create any substantive rights, but instead was designed

to provide a remedy for violations of federal statutory and constitutional rights. *Sepulvado v. Jindal*,

729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1789 (2014); *Southwestern Bell*

*Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez*

*v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 879-80 (5th Cir. 2004);

*Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004).  There are two essential elements to

a Section 1983 action: (1) the conduct in question must be committed by a person acting under color

of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or

the laws of the United States. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134

S. Ct. 1935 (2014); *Romano v. Greenstein*, 721 F.3d 373, 377 (5th Cir. 2013); *Wyatt v. Fletcher*, 718

F.3d 496, 517 (5th Cir. 2013); *Doe ex rel. Magee v. Covington County School District*, 675 F.3d 849,

854 (5th Cir. 2012); *D.A. ex rel. Latasha A. v. Houston Independent School District*, 629 F.3d 450,

456 (5th Cir. 2010); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and*

*Urban Development*, 980 F.2d 1043, 1050 (5th Cir. 1993), *cert. denied*, 510 U.S. 820 (1993).

In order to state a cause of action under Section 1983, a plaintiff must allege facts

establishing that an otherwise private defendant acted "under color" of state law. *Rundus v. City of*

*Dallas, Texas*, 634 F.3d 309, 312 (5th Cir. 2011) (to show there is state action by an otherwise

private entity, the plaintiff must show either (1) the private entity's action represents an official-City policy or custom or (2) the defendant's action in enacting and enforcing the restriction is "fairly attributable" to the City), *cert. denied*, 132 S. Ct. 107 (2011); *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (holding no §1983 liability could exist with regard to private defendants absent allegations the non-governmental defendants acted in concert with a governmental entity to deprive the plaintiff of his rights); *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992); *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386-88 (5th Cir. 1985), *cert. denied*, 488 U.S. 848 (1988).  Stated somewhat differently, a claim for relief under 42 U.S.C. § 1983 must contain two elements: (1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law. *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2995 (2011); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (a person acts under color of state law if he misuses "power" possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).

> Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation.  Rather, the court must consider: (1) whether the officer "misuse[d] or abuse[d] his official power," and (2) if "there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties."  If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law.

*Bustos v. Martini Club Inc.*, 599 F.3d at 464-65 (*Footnotes omitted*).

Thus, not all actions of a state official are necessarily taken under color of state law; where the actor's motivation was personal and the actor did not invoke or use any official authority, there is

an absence of a showing of action "under color of state law."  *Bryant v. Military Department of Mississippi*, 597 F.3d 678, 686-87 (5th Cir. 2010), *cert. denied*, 562 U.S. 893 (2010).

## VI. <u>The Requirement of State Action</u>

Insofar as Plaintiff argues Defendant Beneficial Texas, Inc., may be held liable under § 1983 for its actions in bringing and defending civil legal actions in state court in which Plaintiff was a party because Texas Beneficial, Inc. is incorporated in the State of Texas or otherwise enjoys the privilege of conducting business within the State of Texas in conformity with Texas corporations law generally, that argument is specious.  *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) (private contractors do not become state actors by reason of the significance of their actions or even their total engagement in performing public contracts); *Cornish v. Correctional Service Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (holding the same).  Rather, "the complaining party must show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. at 1004.  Plaintiff alleges no facts showing Beneficial Texas, Inc. either (1) operated in concert, or under contract, with any state or government agency, (2) took any actions with regard to Plaintiff or its litigation against Plaintiff which represented official state or municipal policy, or (3) was ever delegated official state or municipal policy-making authority which rendered Beneficial Texas, Inc.'s conduct fairly attributable to any state or local governmental entity.  Plaintiff's § 1983 claims against Beneficial Texas, Inc. are, therefore, frivolous.  *See Rundus v. City of Dallas, Texas*, 634 F.3d at 312 (holding a private non-profit corporation which contracted with

the city to run the state fair could not be held liable under § 1983 absent proof that either (1) the corporation's actions represented an official-City policy or custom or (2) the corporation's actions in enacting and enforcing a challenged restriction were "fairly attributable" to the City); *Cornish v. Correctional Services Corp.*, 402 F.3d at 549-50 (holding private corporation delegated authority to run juvenile correctional facility did not act under color of state law when it discharged one of its employees after the employee reported alleged violations in the corporation's operation of the facility).

A private corporation like Beneficial Texas, Inc. does not become a state actor or otherwise act "under color of state law" simply by virtue of the fact it filed or defended civil actions in the state courts in its own name or the name of any of its legal successors, as alleged by Plaintiff. *See Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir.) ("For the purpose of section 1983, private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State.' Under the 'fair attribution' test, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor." (Citation omitted)), *cert. denied*, 543 U.S. 829 (2004).  Plaintiff has failed to allege any facts showing the conduct of Beneficial Texas, Inc. about which Plaintiff complains so vociferously in his pleadings in this action is "fairly attributable" to the State of Texas or to any other governmental entity.

## VII. <u>Violations of State Statutes Not a Basis for § 1983 Liability</u>

Insofar as Plaintiff complains that any of the Defendants failed to comply with a variety of state statutes and code provisions, that claim is *non sequitur*.  Absent some showing that the defendants violated Plaintiff's *federal* constitutional rights, complaints about the violation of state statutes, state procedural or evidentiary rules, or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 352 (5th Cir. 2012) ("[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."); *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) (holding alleged violations of TDCJ procedural rules regarding notice and the right to call witnesses and present documentary evidence at a disciplinary hearing did not present an arguable basis to support a due process claim); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) (holding a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process), *cert. denied*, 516 U.S. 860 (1995); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (holding a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met; *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir. 1990) (holding alleged violations of a state statute did not give rise to federal constitutional claims), *cert. denied*, 498 U.S. 1050 (1991); *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because

18

'constitutional minima may nevertheless have been met.'"); *Brown v. Texas A&M University*, 804 F.2d 327, 335 (5th Cir. 1986) (holding a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).  Thus, insofar as Plaintiff alleges merely that any of the defendants failed to comply with state rules of civil procedure, state evidentiary rules, state procedures for handling prisoner mail, or state prison rules and regulations, those allegations, standing alone, do not provide even an arguable basis for recovery or a for a finding that Plaintiff is entitled to any relief under Section 1983.

## VIII. Negligence Insufficient to Establish § 1983 Liability

Mere negligence by a state official does not give rise to § 1983 liability. *Daniels v. Williams*, 474 U.S. 327, 332-35 (1986).  A showing of merely negligent conduct by an official is insufficient to overcome the defense of qualified immunity.  *Whitley v. Hanna*, 726 F.3d at 643 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 410 (5th Cir. 2007 (negligence will not support the denial of qualified immunity); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (holding the same).  Negligent failure to supervise or train does not satisfy the "deliberate indifference" standard and will likewise not support a Section 1983 claim against a municipal entity.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (holding only a showing of deliberate indifference by municipal policy makers will support Section 1983 liability based on a failure-to-train claim); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 170 (5th Cir. 2010) ("'Unintentionally negligent oversight' does not satisfy the deliberate indifference standard."), *cert. denied*, 562 U.S. 1286 (2011); *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (holding

the same), *cert. denied*, 563 U.S. 935 (2011).  Plaintiff has failed to allege any facts showing that either (1) the alleged mishandling by Defendants McKinney or Gaines of Plaintiff's legal documents submitted to the Bexar County District Clerk's office or (2) former Sheriff Lopez's alleged failure to properly train Bexar County Sheriff's Deputies in the proper safety measures for transporting inmates such as Plaintiff ever rose above the level of ordinary negligence.  Plaintiff's claims against these supervisory officials are frivolous.

## IX. <u>No Vicarious Liability Under § 1983</u>

Plaintiff has failed to allege any specific facts showing that either former Sherif Lopez, Bexar County District Clerk McKinney, or Defendant Gaines were personally involved in any of the incidents about which Plaintiff complains in this lawsuit.  Plaintiff does allege that he was not properly secured while being transported from the BCADC on an unspecified occasion and, as a result, he suffered physical injuries to his back and leg.  Plaintiff does not allege any specific facts, however, showing former Sheriff Lopez was physically present on the occasion in question or played any role in transporting Plaintiff on that date.  Likewise, Plaintiff complains that various items he mailed to the Bexar County District Clerk's office were mishandled or not properly filed and never presented to the state courts.  Yet Plaintiff alleges no specific facts showing that either Defendant McKinney or Defendant Gaines were personally involved in the alleged mishandling of Plaintiff's legal submissions.  Plaintiff may not rely upon these three Defendants' supervisory roles over the BCADC or the Bexar County District Clerk's office as a basis for holding them liable under § 1983.

This is because vicarious liability does not apply to § 1983 claims.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (municipality could not be held liable under section 1983 absent proof its failure to adequately train its employees rose to the level of deliberate indifference to the

rights of its citizens); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior); Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978) (a local government may not be sued under § 1983 for injury inflicted solely by its non-policymaking employees or agents).   Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions.  *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (under § 1983, a government official may be held liable solely for his own conduct).  Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d at 169 ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.").

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries.  *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.  *See Porter*

*v. Epps*, 659 F.3d at 446 ("A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"); *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010) (supervisor may be held liable under Section 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise, (2) a causal link exists between the failure and violation of plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference), *cert. denied*, 131 S. Ct. 2932 (2011).  Merely negligent or incompetent supervision cannot form a basis for liability under Section 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* — U.S. —, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).  To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes...employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.,* 520 U.S. at 407, 117 S. Ct. 1382).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

*Porter v. Epps*, 659 F.3d at 446-47.

Plaintiff has alleged no specific facts showing former Bexar County Sheriff Lopez, the current Bexar County District Clerk, or Defendant Gaines had any personal involvement in or personal knowledge of any of the matters about which Plaintiff complains in this Section 1983

lawsuit or that any of these three Defendants' actions or omissions in question rose above ordinary negligence to become deliberate indifference to Plaintiff's constitutional rights.

## X. Limitations Under § 1983

Plaintiff filed his complaint in this action not earlier than January 11, 2016, i.e., the date Plaintiff signed his original complaint (ECF no. 1). There is no federal statute of limitations for § 1983 actions. *Hardin v. Straub*, 490 U.S. 536, 538 (1989) ("Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law."); *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d 911, 916 (5th Cir. 2012); *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995); *Henson-El v. Rogers*, 923 F.2d 51, 52 (5th Cir. 1991), *cert. denied*, 501 U.S. 1235 (1991). Therefore, the Supreme Court has directed federal courts to borrow the forum state's general personal injury limitations period. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d at 916; *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. ), *cert. denied*, 534 U.S. 820 (2001); *Harris v. Hegmann*, 198 F.3d at 156.

In Texas, the applicable limitations period is two years. *Crostley v. Lamar County, Texas*, 717 F.3d 410, 421 (5th Cir. 2013) ("the limitations period for a § 1983 claim is the same as for personal injury actions in the forum state, which in Texas is two years"); *Cuadra v. Houston Independent School District*, 626 F.3d 808, 814 n.7 (5th Cir. 2010) ("Under the general Texas tort statute, Cuadra had two years after the day the cause of action accrued to bring his claims."), *cert.*

*denied*, 131 S. Ct. 2972 (2011); *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) (holding the applicable limitations period for a Section 1983 claim in Texas is two years); *Price v. City of San Antonio, Tex.,* 431 F.3d 890, 892 (5th Cir. 2005) ("There is no dispute that the applicable statute provides that claims must be brought 'not later than two years after the day the cause of action accrues.'"); *Texas Civil Practice and Remedies Code* §16.003(a). *See also Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir.) (holding the Texas discovery rule requires a plaintiff to exercise due diligence), *cert. denied*, 522 U.S. 817 (1997).

While the Supreme Court's opinion in *Wilson v. Garcia*, 471 U.S. 261 (1985), could be read as mandating that federal courts sitting in Texas apply that state's specific limitations periods for each type of individual claim presented in a Section 1983 proceeding, the Supreme Court's subsequent opinion in *Owens v. Okure*, 488 U.S. 235 (1989), clarified that the federal courts should borrow the state's general personal injury limitations period for Section 1983 actions. *Wallace v. Kato*, 549 U.S. at 387; *Owens v. Okure*, 488 U.S. at 249-50; *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d at 916; *Price v. City of San Antonio, Tex.*, 431 F.3d at 892 ("The limitations period for a claim brought under section 1983 is determined by the general statute of limitations governing personal injuries in the forum state.").

Although state law controls the limitations period for Section 1983 claims, federal law determines when the cause of action accrues. *Wallace v. Kato*, 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Cuadra v. Houston Independent School District*, 626 F.3d at 814 n.7 ("Federal law determines the date of accrual for § 1983 claims."); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) ("We determine the accrual date of a § 1983 action by reference to federal law."), *cert. denied*, 558

24

U.S. 829 (2009).  Under the federal standard, the time of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d at 916 ("Under federal law, the statute of limitations under § 1983 begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."); *Cuadra v. Houston Independent School District*, 626 F.3d at 814 n.7 ("A general cause of action accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."); *Walker v. Epps*, 550 F.3d at 414 ("the limitations period begins to run '"the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."'"); *Piotrowski v. City of Houston*, 237 F.3d at 576, (holding a plaintiff's awareness encompasses two elements: the existence of injury and causation, i.e., the connection between the injury and the defendant's actions; the plaintiff need not know that he has a cause of action, he need only know the facts that would ultimately support a claim); *Piotrowski v. City of Houston*, 51 F.3d 513, 516 (5th Cir. 1995) (holding a plaintiff need not realize that a legal cause of action exists, as long as he knows the facts that would support a claim); *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (holding the statute of limitations begins to run when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury); *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) ("the statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.").

State law governs the tolling of limitations for Section 1983 claims.  *Hardin v. Straub*, 490 U.S. at 539 (holding limitations periods in § 1983 suits are to be determined by reference to appropriate state statutes and coordinate tolling rules); *Board of Regents of University of State of*

*New York v. Tomanio,* 446 U.S. 478, 484 (1980) ("In § 1983 actions, however, a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law."); *Walker v. Epps*, 550 F.3d at 415 ("Just as we borrow the forum state's statute of limitations for § 1983 purposes, we borrow also the state's tolling principles."); *Cruz v. Louisiana ex rel. Dept. of Public Safety and Corrections*, 528 F.3d 375, 378 n.7 (5th Cir. 2008) ("state law supplies the applicable limitations period and tolling provisions.").   *See also Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) (holding incarceration does not toll limitations under Texas law and the Texas rule regarding tolling of limitations pending service on defendants did *not* apply to federal claims).

Insofar as Plaintiff's pleadings in this cause purport to complain about the actions or omissions of the defendants prior to January 11, 2014, Plaintiff's claims are barred by the two-year statute of limitations applicable to § 1983 actions in Texas.  Thus, Plaintiff's claims against former Sheriff Lopez, Defendant McKinney, and defendant Gaines arising from their alleged actions (or more accurately the alleged actions of their subordinates) committed prior to January 11, 2014, are all foreclosed and frivolous.

Plaintiff has not alleged any specific facts showing any of these three Defendants personally engaged in any conduct subsequent to January 11, 2014, which violated Plaintiff's federal constitutional rights.  On the contrary, Plaintiff filed a state civil tort lawsuit in 2005 against former Sheriff Lopez complaining about Plaintiff's alleged injuries suffered while being transported from the BCADC.  Plaintiff alleges no specific facts indicating former Sheriff Lopez was personally

involved in any action which harmed Plaintiff subsequent to January 11, 2014.[4]  All of Plaintiff's § 1983 claims against Sheriff Lopez are, therefore, barred.  Plaintiff's complaints that Defendants Gaines and McKinney mishandled Plaintiff's legal submissions in 2005, 2008, 2010, and 2013 are likewise barred by limitations and wholly frivolous.  Insofar as Plaintiff complains about the actions of Beneficial Texas, Inc. which took place prior to January 11, 2014, those claims are also barred by the two-year statute of limitations.

## XI. Qualified Immunity

As public officials performing discretionary roles, state district judges Shannon and Mery, former Sheriff Lopez, Bexar County District Clerk McKinney, and Defendant Gaines are entitled to the benefits of the doctrine of qualified immunity.  Even when a state official or other person acting under color of state law engages in constitutionally impermissible conduct, the defendant may nevertheless be shielded from liability for civil damages if the defendant's actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 583 U.S. 731, ___, 131 S. Ct. 2074, 2085 (2011); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

The defense of qualified immunity first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is neither a complete barrier to recovery nor a true affirmative defense.  Rather, its invocation

---

[4] The Court takes judicial notice of the fact former Bexar County Sheriff Lopez left public office shortly after the election of the current Bexar County Sheriff in November, 2012.  Thus, all of Plaintiff's § 1983 claims in this lawsuit against former Sheriff Lopez are barred by the two-year statute of limitations.

serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties. A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense. *McCreary v. Richardson*, 738 F.3d at 655; *Wyatt v. Fletcher*, 718 F.3d at 802; *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). Once a government official or employee has asserted qualified immunity and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does *not* bar recovery. The Fifth Circuit has authorized the dismissal as frivolous of civil rights claims which fail to establish a violation of the plaintiff's "clearly established" federal rights. *See Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (affirming summary dismissal of complaint against state prison officials as frivolous on qualified immunity grounds). An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity. *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998); *see also Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known), *cert. denied sub nom. Ashabranner v. Goodman*, 558 U.S. 1148 (2010); *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 418 (5th Cir. 2008) (holding the same); *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (holding the same).

An official acts within the scope of his authority if he discharges the duties generally assigned to him. *Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091-92. For executive officers in general,

28

qualified immunity is the norm. *Malley v. Briggs*, 475 U.S. at 340; *Harlow v. Fitzgerald*, 457 U.S. at 807.

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S., at 206, 121 S. Ct. 2151. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. *Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).
>
> Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242. Section 242 makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution. In *United States v. Lanier,* 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997), we held that the defendant was entitled to "fair warning" that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under § 1983.

*Hope v. Pelzer*, 536 U.S. at 739-40.

The Supreme Court has admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of §1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery. *See Siegert v. Gilley*, 500 U.S. 226, 231-302 (1991) (holding that, until a determination is made that the plaintiff's clearly established constitutional rights were violated, discovery should not be allowed); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (recognizing one of the purposes of qualified immunity is to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government);

*Mitchell v. Forsyth*, 472 U.S. at 526-27 (holding denials of qualified immunity are subject to immediate appellate review because the protection afforded by qualified immunity is one from suit, not just liability); *Harlow v. Fitzgerald*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.").

Once a defendant pleads qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were objectively reasonable in light of the law that was clearly established at the time the contested action occurred; until this threshold is resolved, discovery should not be allowed. *Siegert v. Gilley*, 500 U.S. at 232-33; *Harlow v. Fitzgerald*, 457 U.S. at 818.  Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a plaintiff's "clearly established" constitutionally-protected right.  *Siegert v. Gilley*, 500 U.S. at 231; *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006).  If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was "objectively reasonable" under legal principles as they existed at the time of the defendant's acts or omissions.  *See Wyatt v. Fletcher*, 718 F.3d at 502 (a right is clearly established only if its contours are sufficiently cleat that a reasonable official would understand that what he is doing violates that right); *Easter v. Powell*, 467 F.3d at 462 ("First, we determine whether, under current constitutional standards, the plaintiff has alleged a violation of a clearly established constitutional right.  If so, we then decide if the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." (*Footnote*

*omitted*)); *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1992) ("The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation -- we look to the clearly established law at that time.").

In summary, the two-pronged qualified immunity test inquires first whether the defendant's conduct violated the plaintiff's clearly established constitutional rights and, second, whether the defendant's conduct was nonetheless objectively reasonable in light of legal principles as they existed at that time. *Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d at 502; *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity (*Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d at 1430); and (2) permit limited discovery pending disposition of the qualified immunity issue only in those extraordinary situations in which the specific facts contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity. *Reyes v. Sazan*, 168 F.3d at 161. This heightened pleading requirement applies to pro se litigants. *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 621 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). "[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense." *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Reyes v. Sazan*, 168 F.3d at 161;

*Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *James v. Sadler*, 909 F.2d 834, 838 (5th Cir. 1990) (holding questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).

A complaint which raises the likely issue of immunity cannot be cast in broad, vague, general, indefinite, or conclusory terms, but must include detailed facts supporting the contention that the plea of immunity cannot be sustained. *Gobert v. Caldwell*, 463 F.3d 339, 348 n.27 (5th Cir. 2006); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). Discovery related to the applicability of qualified immunity is appropriate only when factual issues exist as to the applicability of qualified immunity. *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991).

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, as explained above, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Ashcroft v. Al-Kidd*, 583 U.S. at ___, 131 S. Ct. at 2090; *Anderson v. Creighton*, 483 U.S. at 646 n.6; *Harlow v. Fitzgerald*, 457 U.S. at 818; *Wyatt v. Fletcher*, 718 F.3d at 502; *Easter v. Powell*, 467 F.3d at 462. If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *See Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 631 (5th Cir. 2011) (fact that reasonable minds could disagree on the propriety of the plaintiff's termination is insufficient to defeat a public officer's qualified immunity defense); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 407-08 (5th Cir. 2007) (if reasonable public officials could differ as to whether the defendant's actions were lawful,

32

the defendant is entitled to immunity); *see also Malley v. Briggs*, 475 U.S. 335, 341(1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."). Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In a § 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law. *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful act or omission generally turns on the "objective legal reasonableness" of the act or omission assessed in the light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. at 639.

For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. at 640. While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions. *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.), *cert. denied*, 525 U.S. 872 (1998). The Fifth Circuit has directed courts to initially examine Supreme Court and Fifth Circuit precedent, i.e., "controlling authority," in the course of determining whether a legal principle is "clearly established"; the law of other Circuits may be considered when "a consensus of cases of persuasive authority [is] such that a reasonable officer could not have believed that his actions were

lawful." *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.) (*en banc*), *cert. denied*, 537 U.S. 1232 (2002).

The second step in the qualified immunity analysis is the determination of the objective reasonableness of the defendant's act or omission. Objective reasonableness is assessed in light of the legal rules clearly established at the time of the incident; an officer's conduct is not objectively reasonable when all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on. The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Malley v. Briggs*, 475 U.S. 335, 343 (1986). In addition, merely negligent conduct on the part of a government official cannot meet the rather stringent standard for liability under Title 42 U.S.C. §1983. *Daniels v. Williams*, 474 U.S. at 331-34; *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Plaintiff has failed to allege any specific facts showing any of the public officials or employees named as Defendants in this § 1983 lawsuit ever engaged in any conduct which violated Plaintiff's clearly established federal constitutional rights.

## XII. Judicial Immunity

"The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority." *Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990). It is hornbook law, settled in our jurisprudence for over a century, that a judge enjoys absolute immunity from liability for damages for judicial acts performed within his jurisdiction. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). The doctrine of absolute judicial immunity protects judges from liability for all actions taken in their judicial capacities, so long as they do not act in a clear absence of all jurisdiction. *Mireles*

*v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-58 (1978); *Davis v. Tarrant County, Texas*, 565 F.3d 214, 221 (5th Cir.), *cert. denied*, 558 U.S. 1024 (2009); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005); *Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996); *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *Brandley v. Keeshan*, 64 F.3d 196, 200-01 (5th Cir. 1995), *cert. denied*, 516 U.S. 1129 (1996); *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994); *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir. 1993). It is well-settled that the doctrine of absolute judicial immunity protects judicial officers not only from liability, but also from suit. *Mireles v. Waco*, 502 U.S. at 11; *Davis v. Tarrant County, Texas*, 565 F.3d at 221; *Ballard v. Wall*, 413 F.3d at 515. The doctrine of absolute judicial immunity applies to judicial acts of judges acting within their jurisdiction even in suits brought pursuant to 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Mays v. Sudderth*, 97 F.3d at 111.

Absolute judicial immunity is overcome in only two rather narrow sets of circumstances: first, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity, and second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. at 11-12; *Davis v. Tarrant County, Texas*, 565 F.3d at 221; *Ballard v. Wall*, 413 F.3d at 515. Examination of the cases cited by the Supreme Court in its opinion in *Mireles* illuminates the narrowness of each such exception to the general rule of absolute judicial immunity. As an example of the first exception, i.e., non-judicial actions, the Supreme Court cited in *Mireles* to its opinion in *Forrester v. White*, 484 U.S. 219 (1988), in which it held that a judge was not immune from liability for allegedly having engaged in illegal discrimination when firing a court employee. *Forrester v. White*, 484 U.S. at 225-29. To help define the parameters of the second exception, i.e., actions taken in complete absence of all

jurisdiction, the Supreme Court cited to its opinions in *Bradley v. Fisher*, 13 Wall. 335, 351-52 (1872) (in which it discussed a hypothetical situation in which a judge in a probate court with limited statutory jurisdiction attempted to try parties for public criminal offenses), and *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978) (in which the Supreme Court held a state judge presiding over a court of general jurisdiction absolutely immune from liability for issuing an order permitting a mother to sterilize her somewhat retarded fifteen year old daughter, despite the fact the judge had arguably violated state statutes relating to the sterilization of minors and incompetent persons in so doing).

As will be discussed in detail below, none of the actions of Judges Shannon or Mery identified in Plaintiff's pleadings in this lawsuit fall within either of these two narrow exceptions to the general rule of absolute judicial immunity.  This Court takes judicial notice of the fact that, at all times relevant to Plaintiffs' claims herein, Judge Shannon and Judge Mery served as a Texas state district judges, a position which, like the state judge involved in *Stump v. Sparkman* involves presiding over a state trial court of general jurisdiction.

It is well-settled that judges are absolutely immune against an action for damages for acts performed in their judicial capacities, even when such acts are alleged to have been done maliciously or corruptly.  *Mireles v. Waco*, 502 U.S. at 11; *Stump v. Sparkman*, 435 U.S. at 356-58; *Ballard v. Wall*, 413 F.3d at 515 ("Judicial immunity is not overcome by allegations of bad faith or malice and applies even when the judge is accused of acting maliciously and corruptly." (*quoting Mireles v. Waco*)) ; *Boyd v. Biggers*, 31 F.3d at 284 ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant."); *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993) ("[J]udicial immunity is not overcome by allegations of bad faith or malice.").  A judge is absolutely immune for all judicial acts "not performed in clear absence of all jurisdiction however erroneous

the act and however evil the motive." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

"[A]bsolute immunity is justified and defined by the governmental functions it protects and serves,

not by the motives with which a particular officer performs those functions." *Brummett v. Camble*,

946 F.2d 1178, 1181 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992). "Judges are absolutely

immune from liability for judicial actions unless performed in clear absence of jurisdiction. The

alleged magnitude of the error or mendacity of the acts is irrelevant." *Young v. Biggers*, 938 F.2d

565, 569 n.5 (5th Cir. 1991) (*Citations omitted*). Thus, a plaintiff cannot overcome judicial

immunity merely by making allegations, as does Plaintiff herein, of bad faith or malice. *Mireles v.*

*Waco*, 502 U.S. at 11; *Ballard v. Wall*, 413 F.3d at 515; *Malina v. Gonzales*, 994 F.2d at 1125. "The

fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural

errors is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d at 230.

Contrary to the arguments contained in Plaintiff's response to this Court's Order for more

definite statement, mistakes or erroneous rulings do not deprive a judge of all jurisdiction. *Stump*

*v. Sparkman*, 435 U.S. at 359 ("grave procedural errors do not deprive a judge of all jurisdiction.").

Likewise, mere allegations a judge performed judicial acts pursuant to a bribe or a conspiracy will

not suffice to overcome absolute immunity. *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir.), *cert.*

*denied*, 474 U.S. 1037 (1985). "The federal civil rights laws do not provide a vehicle to attack state

court judgments nor to sanction the conduct of state court judges for actions taken within the scope

of their judicial authority." *Bogney v. Jones*, 904 F.2d at 274 (upholding the imposition of Rule 11

sanctions based upon a civil rights plaintiff's assertion of claims against a state district judge). For

these reasons, allegations of bad faith and malice against a judicial officer fail to state a cognizable

cause of action under the federal civil rights laws.

In determining whether a judge's actions were "judicial in nature," the federal courts consider whether (1) the precise act complained of is a normal judicial function; (2) the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) the controversy centered around a case pending before the court; and (4) the acts arose directly out of a visit to the judge in his official capacity. *Davis v. Tarrant County, Texas*, 565 F.3d at 222; *Ballard v. Wall*, 413 F.3d at 515; *Malina v. Gonzales*, 994 F.2d at 1124; *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972).  "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" *Mireles v. Waco*, 502 U.S. at 12; *Stump v. Sparkman*, 435 U.S. at 362.  These four factors are broadly construed in favor of immunity and the absence of one or more factors does not prevent a determination that judicial immunity applies in a particular case. *Davis v. Tarrant County, Texas*, 565 F.3d at 223; *Ballard v. Wall*, 413 F.3d at 515; *Malina v. Gonzales*, 994 F.2d at 1124; *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985), *cert. denied*, 474 U.S. 1101 (1986).  Stripped of the vitriolic and vituperative invective which permeates Plaintiff's pleadings, Plaintiff's claims against Judges Shannon and Mery are assertions these two judicial officers (1) made legally erroneous rulings on matters pending before their courts, (2) disregarded or ignored pleadings, motions, and other documents submitted by Plaintiff and the legal arguments contained in Plaintiff's submissions, and (3) issued Order and Judgments which disregarded or overruled valid, prior orders and judgments which were favorable to Plaintiff.  All of these alleged actions and omissions by Judges Shannon and Mery, even if incorrect under applicable state law, nonetheless constituted "judicial actions" for which those two Defendants are absolutely immune in this § 1983 lawsuit.

Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes. *Ballard v. Wall*, 413 F.3d at 517; *Malina v. Gonzales*, 994 F.2d at 1125; *Adams v. McIlhany*, 764 F.2d at 298. Plaintiff alleges no facts showing the state district courts in which any of the state civil actions identified in Plaintiff's pleadings in this federal civil rights actions were once pending were without jurisdiction over those state civil actions. For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction. *Davis v. Bayless*, 70 F.3d at 373. Because some of the most difficult questions a judge must decide relate to the scope of his own jurisdiction, the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. *Ballard v. Wall*, 413 F.3d at 517; *Davis v. Bayless*, 70 F.3d at 373. Plaintiff has alleged no facts showing either Judge Shannon or Judge Mery took any action in any civil matter in which Plaintiff was a party "in clear absence of all jurisdiction." On the contrary, Plaintiff identifies case after case of state civil actions pending before those judges in which Plaintiff alleges those judges made judicial rulings with which Plaintiff now disagrees. Plaintiff's claims against Defendants Shannon and Mery in their individual capacities are barred by the doctrine of absolute judicial immunity and frivolous.

Insofar as Plaintiff seeks damages from the judicial Defendants in their official capacities, those efforts are foreclosed by the Eleventh Amendment. While the doctrine of judicial immunity applies to claims against judges in their individual capacities, Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Warnock v. Pecos*

*County, Texas,* 88 F.3d 341, 343 (5th Cir. 1996); *Holloway v. Walker,* 765 F.2d 517, 519 (5th Cir. 1985), *cert. denied,* 474 U.S. 517 (1985).

## XIII. *Rooker-Feldman* Abstention

As this Court previously explained to Plaintiff, he may not employ the federal civil rights statutes to collaterally attack otherwise final state court judgments in his civil actions.  The Supreme Court has explained the *Rooker-Feldman* Abstention Doctrine as follows:

> As we explained in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the *Rooker–Feldman* doctrine has been applied by this Court only twice, *i.e.,* only in the two cases from which the doctrine takes its name: first, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), then 60 years later, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  Both cases fit this pattern: The losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment.  Alleging federal-question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District Court to overturn the injurious state-court judgment.  We held, in both cases, that the District Courts lacked subject-matter jurisdiction over such  claims, for 28 U.S.C. § 1257 "vests authority to review a state court's judgment solely in this Court."  See *Exxon,* 544 U.S., at 292, 125 S.Ct. 1517.

*Skinner v. Switzer,* 562 U.S. 521, 531 (2011).

Plaintiff was advised by this Court when it dismissed Plaintiff's civil rights lawsuit docketed as cause no. SA-14-CA-100-DAE that the Supreme Court's *Rooker-Feldman* doctrine precluded this Court from exercising jurisdiction over Plaintiff's civil rights Complaint alleging Judge Shannon and other violated Plaintiff's rights in connection with a state civil personal injury lawsuit which had been dismissed.  The same principle applies to Plaintiff's complaints about Judge Mery's October, 2015 ruling in another civil action filed and fully litigated in state court.  Insofar as Plaintiff was dissatisfied with the ultimate rulings made by either Judge Shannon or Judge Mery, his remedy was

to appeal the final trial court judgments in those cases to the appropriate intermediate state appellate court and, if he was dissatisfied with the state appellate court's ruling, to seek review from the Supreme Court of Texas.  The federal civil rights statutes do not furnish a means for Plaintiff to re-litigate matters he could and should have presented to the state courts in his civil lawsuits.

## XIV. *Heck v. Humphrey* **Foreclosure**

A § 1983 cause of action for malicious prosecution accrues when the criminal proceeding against the plaintiff finally terminates favorably to the plaintiff.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1306 (5th Cir. 1995); *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), *cert. denied*, 516 U.S. 1129 (1996); *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992).  Insofar as Plaintiff's most recent pleading argues he is entitled to re-litigate the claims he raised in his previous federal habeas corpus action or to present new claims collaterally attacking the state criminal conviction and sentence which form the basis for his current incarceration, those arguments are foreclosed by the Supreme Court's  landmark opinion in *Heck v. Humphrey,* 512 U.S. 477 (1994), in which the Supreme Court unequivocally held that no cause of action exists under Section 1983 for state prisoners who bring civil rights actions for allegedly unconstitutional conviction or imprisonment, or otherwise collaterally attacking the constitutionality of the convictions that form the basis for their incarceration, <u>unless</u> the state prisoner can show that the state criminal conviction he is collaterally attacking has been invalidated by a state appellate court, a state or federal habeas court, or some other state authority with jurisdiction to do so.  *See Heck v. Humphrey*, 512 U.S. at 486-87:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. * * * Even a prisoner who has fully exhausted available state remedies has no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

The Fifth Circuit has applied the rule announced in *Heck* in a wide range of contexts. *See, e.g., Morris v. McAllester*, 702 F.3d 187, 189-90 (5th Cir. 2012) ("Under *Heck,* a §1983 plaintiff may not recover damages for an unconstitutional conviction or for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid' until he has shown that the conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' "), *cert. denied*, 134 S. Ct. 80 (2013); *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) ("It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' "); *Cronn v. Buffington*, 150 F.3d 538, 541 & n.2 (5th Cir. 1998) (holding a federal prisoner bringing a *Bivens* action collaterally attacking the revocation of his federal parole first had to successfully challenge that revocation); *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (holding a prisoner's claims of ineffective assistance and state trial court deficiencies had to be pursued first in habeas corpus actions and that claims for monetary

damages were foreclosed by *Heck*); *see also Cronn v. Buffington*, 150 F.3d 538, 541 & n.2 (5th Cir. 1998) (holding a federal prisoner bringing a *Bivens* action collaterally attacking the revocation of his federal parole first had to successfully challenge that revocation); *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (holding a prisoner's claims of ineffective assistance and state trial court deficiencies had to be pursued first in habeas corpus actions and that claims for monetary damages were foreclosed by *Heck*); *Hudson v. Hughes*, 98 F.3d 868, 872-73 (5th Cir. 1996) (holding a prisoner convicted of battery of an officer and possession of a firearm by a convicted felon could not challenge his arrest for burglary (which led to the other charges against plaintiff) even though the burglary charge was later dropped); *Hamilton v. Lyons*, 74 F.3d 99, 102-03 (5th Cir. 1996) (applying the rule in *Heck* to collateral attacks upon a criminal conviction and parole revocation arising from an allegedly coerced confession and the suppression, destruction, and alteration of evidence); *Littles v. Board of Pardons and Paroles Division*, 68 F.3d 122, 123 (5th Cir. 1995) (applying the rule in *Heck* to a challenge to a parole-revocation proceeding); *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995) (affirming the dismissal with prejudice as frivolous of a convicted prisoner's Section 1983 complaint against his prosecutor and presiding trial judge); *Hulsey v. Owens*, 63 F.3d 354, 355 n.2 (5th Cir. 1995) (holding the rule in *Heck* foreclosed a prison inmate's Section 1983 action challenging the revocation of his parole); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir.) (holding rule in *Heck* applies to claims of illegal stop of a vehicle, illegal search and seizure, and illegal arrest which resulted in revocation of the plaintiff's probation and parole), *cert. denied*, 516 U.S. 851 (1995); *McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 160-61 (5th Cir. 1995) (applying the rule in *Heck* to a collateral attack upon the revocation of the plaintiff's parole); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (applying the rule in *Heck* to a convicted prisoner's false

arrest and malicious prosecution claims); *Arvie v. Broussard*, 42 F.3d 249, 250 (5th Cir. 1994) (holding suit challenging validity of criminal conviction precluded by rule in *Heck*); *Boyd v. Biggers*, 31 F.3d 279, 282-83 (5th Cir. 1994) (holding a convicted prisoner's civil rights conspiracy claim against a state court judge, prosecutor, court-appointed defense counsel, sheriff, and investigator was foreclosed by the rule in *Heck*); *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994) (applying the rule in *Heck* to a convicted federal prisoner's *Bivens* claim). *But contrast Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (holding a pretrial detainee's challenge to the legality of his arrest did <u>not</u> necessarily implicate the validity of the criminal prosecution then underway against him and suggesting that the district court should stay the § 1983 action until such time that it could be determined whether the plaintiff's illegal arrest claims implicated the criminal prosecution then pending against him).

In this case, it is abundantly clear Plaintiff's conviction for aggravated sexual assault of a child had never been vacated, reversed, or otherwise abrogated. The Supreme Court's opinion in *Heck* is consistent with well-established Fifth Circuit precedent to the effect that a Section 1983 cause of action for malicious prosecution does not accrue unless and until the underlying criminal prosecution terminates favorably to the plaintiff. *Brandley v. Keeshan*, 64 F.3d at 199; *Brummett v. Camble*, 946 F.2d at 1184.

> It is well settled that, under *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87, 114 S. Ct. 2364; *Randell v. Johnson,* 227 F.3d 300, 301 (5th Cir.2000); *Sappington v. Bartee,* 195

44

F.3d 234, 235 (5th Cir.1999). " *Heck* requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.' " *Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir.1995) (citation omitted). This requirement or limitation has become known as the "favorable termination rule." *Sappington,* 195 F.3d at 235.

*Ballard v. Burton,* 444 F.3d 391, 396 (5th Cir. 2006).

> Typically, the burden is met by proving that the state court with jurisdiction has so ruled.  An acquittal, an order of dismissal based on the running of the statute of limitations on the crime or an order of dismissal reflecting an affirmative decision not to prosecute are examples of such a termination.  *A successful writ of habeas corpus may, in some instances, terminate a criminal prosecution in the defendant's favor.*  Even a prosecutor's failure to act on remand will at some point entitle the defendant to an order of dismissal.  However, the reversal of a conviction and remand for new trial is not, in and of itself, a termination. (*Emphasis added*).  Because plaintiff's Section 1983 claims herein are, in part, a form of collateral attack upon the constitutionality of the plaintiff's current incarceration and because the state criminal proceeding that resulted in plaintiff's current incarceration has not been vacated, reversed, or otherwise abrogated, those portions of plaintiff's Section 1983 claims herein which collaterally attack the validity of plaintiff's current incarceration do not state a cause of action cognizable under federal civil rights principles.  Regardless of whether plaintiff exhausts state and federal habeas remedies in his efforts to collaterally attack the legality of his current incarceration, the Supreme Court's holding in *Heck* forecloses him from attempting to use Section 1983 for that purpose: "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."

*Brandley v. Keeshan*, 64 F.3d at 199 (*quoting Heck v. Humphrey*, 512 U.S. at 489).

The Fifth Circuit has broadly construed the Supreme Court's opinion in *Heck* to foreclose any civil rights claim that might result in a judgment that would necessarily imply the invalidity of the plaintiff's conviction.  *Edwards v. Balisok*, 520 U.S. at 646-49; *Heck v. Humphrey*, 512 U.S. at 486-87; *Arvie v. Broussard*, 42 F.3d at 250 (holding that, where a suit brought pursuant to Section 1983 challenges the legality of the plaintiff's conviction, the claim is not cognizable unless the conviction

has been invalidated); *Boyd v. Biggers*, 31 F.3d at 282-83 (holding the same). Insofar as Plaintiff's § 1983 claims attempt to collaterally attack his otherwise final state criminal conviction and sentence, those claims are foreclosed by the rule in *Heck* and frivolous.

Accordingly, it is hereby **ORDERED** that:

1. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE** as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1) and for failure to state a cause of action.

2. The Clerk of Court shall transmit a copy of this Memorandum Opinion and Order and the Final Judgment in this case to the Pro Se Staff Attorney, Attn.: Keeper of the "Three Strikes List," U.S. District Court for the Eastern District of Texas for the Tyler Division, 211 West Ferguson, Tyler, Texas 75702, so this case may be recorded in the "Three-Strikes List."

3. The Clerk of this Court shall transmit a copy of this Memorandum Opinion and Order and the Final Judgment in this cause to the TDCJ Office of General Counsel, P.O. Box 13084, Austin, Texas 78711.

**SIGNED** on April 4, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE